UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CAITLIN H.,[1]

      Plaintiff,

                                 **Case No. 1:22-cv-3760**

    v.                          **Magistrate Judge Norah McCann King**

MARTIN O'MALLEY,
Commissioner of Social Security,

      Defendant.

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Caitlin H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I.    PROCEDURAL HISTORY

On October 31, 2018, Plaintiff filed her application for benefits, alleging that she haa been disabled since August 1, 2016.[3] R. 116, 129, 242–45. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin J. O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

[3] Plaintiff later amended her alleged disability onset date to August 1, 2017. R. 31, 72–73.

and upon reconsideration. R. 130–34, 137–41. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 143–44. ALJ Bruce Cooper held a hearing on October 14, 2020, at which Plaintiff, who was represented by counsel, testified. R. 90–102. The ALJ held a second hearing on January 27, 2021, at which Plaintiff, who was again represented by counsel, again testified, as did a medical expert and a vocational expert. R. 90–102. In a decision dated March 1, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 1, 2017, Plaintiff's amended alleged disability onset date, through June 30, 2020, the date on which Plaintiff was last insured for benefits. R. 31–43. That decision became final when the Appeals Council declined review on April 11, 2022. R. 1–7 (setting aside an earlier decision from the Appeals Council dated February 8, 2022, R. 8–14, in order to consider additional information). Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 20, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[4] On March 21, 2023, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at \*3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at \*4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at \*4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.       Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 33 years old on June 30, 2020, the date on which she was last insured for benefits. R. 41. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 1, 2017, her amended alleged disability onset date, and June 30, 2020. R. 33.

At step two, the ALJ found that Plaintiff's chronic fatigue syndrome; fibromyalgia; and degenerative disc disease of the cervical spine were severe impairments. R. 33. The ALJ also found that inflammatory bowel disease/irritable bowel syndrome, depression, and post-traumatic stress disorder were not severe impairments. R. 34–36.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 36–37.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 37–41. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a market research analyst. R. 41.

At step five and relying on the testimony of the vocational expert, the ALJ found that a

significant number of jobs—*e.g.*, jobs as an addresser, a table worker, and a toy stuffer—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 42–43. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2017, her amended alleged disability onset date, through June 30, 2017, the date on which she was last insured. R. 43.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 7; *Plaintiff's Reply Brief*, ECF No. 12. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.   Shilpa Sayana, M.D.

On September 29, 2020, Shilpa Sayana, M.D., Plaintiff's treating physician, completed a five-page, check-the-box and fill-in-the-blank physical medical source statement. R. 1420–24. Dr. Sayana had seen Plaintiff every two to three months since 2017. R. 1420. She diagnosed fibromyalgia, "IBD-5" (inflammatory bowel disease), depression, and chronic fatigue syndrome and opined that Plaintiff's prognosis was "fair." *Id*. Plaintiff's symptoms were fatigue, body/joint pains, diarrhea, abdominal pain, depression, and anxiety. *Id*. Dr. Sayana described Plaintiff's pain as "in all joints and muscle, no precipitating factors[.]" *Id*. Asked to identify the clinical findings and objective signs supporting the diagnoses, Dr. Sayana responded, "On physical exam has muscle pain or tender point areas." *Id*. Dr. Sayana described Plaintiff's treatment and

responses to such treatment as follows: "Can not tolerate many medications due to side effect[.]" *Id*. Dr. Sayana indicated that Plaintiff's impairments had lasted or were expected to last at least twelve months and that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, identifying depression, anxiety, and PTSD as psychological conditions affecting Plaintiff's physical conditions. R. 1420–21. According to Dr. Sayana, Plaintiff could walk one city block without rest or severe pain, could sit for 45 minutes at a time before needing to get up, and could stand for 5 minutes at a time before needing to sit down or walk around. R. 1421. Asked the total amount of time that Plaintiff could sit and stand/walk in an eight-hour day, Dr. Sayana circled "less than 2 hours" and handwrote "< 30 min" (less than 30 minutes). *Id*. According to Dr. Sayana, Plaintiff needed a job that permits shifting positions at will from sitting, standing, or walking; needed periods of walking around every 30 minutes for a period 10 minutes during an 8-hour working day; and needed breaks every 30 minutes lasting 1 to 2 hours to accommodate her pain, muscle weakness, and chronic fatigue. R. 1421–22. Dr. Sayana further opined that Plaintiff needed to elevate her legs 65 degrees 60% of the time with prolonged sitting because of her pain and weakness. R. 1422. Additionally, Plaintiff required a cane or other hand-held device with occasional standing/walking because of her imbalance, pain, and weakness. *Id*. According to Dr. Sayana, Plaintiff could rarely lift and carry less than 10 pounds; could occasionally twist, stoop (bend), crouch/squat; could rarely climb stairs; and could never climb ladders. *Id*. In an 8-hour working day, Plaintiff could never use her hands to grasp and turn/twist objects, could use her fingers 10% of the time for fine manipulation, and could use her arms 10% of the time to reach in front of her body and overhead. R. 1422–23. Plaintiff was likely to be off task 25% or more of the time; was incapable of even low stress work because "she is unable to have normal perspective"; and her impairments were likely to produce "good days" and "bad

9

days;" she would likely be absent from work more than four days per month as a result of her impairments or treatment. R. 1424. Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. *Id*. Finally, Dr. Sayana opined that Plaintiff was sensitive to smoke, fumes, gasses, and temperatures. *Id*.

**B.      Stephen Kaplan, M.D.**

At the administrative hearing on January 27, 2021, Stephen Kaplan, M.D., testified as a medical expert. R. 56–69. The ALJ inquired about Plaintiff's functional limitations and Dr. Sayana's opined limitations in the following exchange:

Q And based upon your review of our record here, do you have any opinion as to whether or not there would be any functional limitations?

A Yes, now this is -- there are different -- although there's pretty much kind of a unanimous approach among specialists like myself, that basically suggest that these people are best served by leaving them at a sedentary work situation, and that they should be maintained in a situation, which has a very low level of stress, either physical or emotional. The best data in terms of people recovering from this or getting rid of it is actually now for behavioral modification techniques. Some said -- they call it pain rehabilitation. So, basically, we suggest these people actually should do as much physical therapy as they can and in terms of a work potential, should be maintained at a sedentary work situation but with ones associated with low stress.

Q And do you have an opinion as to with regards to the fatigue? There was some reference to—

A Yeah, she has fatigue. That's very common with fibromyalgia.

Q Yeah, there's a reference to -- right. There's a reference to one of her doctors, treating doctors, indicating that – let's see here, that she would be off task 2~% or more of an eight-hour workday, would be absent about four days a month and really wouldn't be able to stand or walk for anything -- for up to two hours in an eight-hour workday, and de you concur with that?

A *Well, it's a pretty more restrictive environment that I've -- my answer to the questions like that are there's a lot of individual variation in terms of how the person handles the -- having this chronic pain, and we certainly know what the literature says about 40 to 60 [percent] of these people recover and are able to return to a much more active lifestyle*. Again, they are encouraged to have as much

-- to tolerate much physical therapy. *It sounds quite restrictive to me, but I also point out that I've never met the lady nor was I ever supposed to, and I you know, suggest that if you know the Claimant, you have a lot more credibility than I do but my professional opinion is it sounds quite restrictive*, which is a common thing particularly amo[ng] primary care doctors and I don't demean it. l just suggest that *a trial of sedentary work* is not a bad idea and if you can get the lady to a behavioral modification program, she *may* be able to adjust to a work situation.

R. 64–66 (emphasis added).

## V.   DISCUSSION

As noted above, the ALJ determined that Plaintiff had an RFC for a limited range of sedentary work. R. 37. Plaintiff argues that this determination is not supported by substantial evidence because the ALJ failed to properly consider, *inter alia*, Dr. Sayana's opinion. *Plaintiff's Memorandum of Law*, ECF No. 7, pp. 17–26; *Plaintiff's Reply Brief*, ECF No. 7, pp. 1–4. This Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the

discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, at 705).

For claims filed after March 27, 2017,[5] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations,

---

[5] As previously noted, Plaintiff's claim was filed on October 31, 2018.

and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2). The applicable regulation also requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at § 404.1520c(b).

In the case presently before the Court, the ALJ determined at step four of the sequential evaluation that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary

work as defined in 20 CFR 404.1567(a) except as follows: she could lift and carry ten pounds occasionally and less than ten pounds frequently; she could stand and walk, with normal breaks, for two hours in an eight-hour workday; pushing and pulling was limited to the same extent as lifting and carrying; she could operate foot controls with the right foot occasionally and with the left foot occasionally; she could frequently climb ramps and stairs, never climb ladders, ropes, or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl; she could perform simple, routine tasks and make simple work-related decisions; she could frequently interact with supervisors and coworkers; she could occasionally interact with the public; and she could tolerate only few changes in a routine work setting, defined as a low stress environment.

R. 37. In reaching this determination, the ALJ found, *inter alia*, that Dr. Sayana's opinion was

not persuasive, reasoning as follows:

> Further, on September 29, 2020, the claimant's treating provider, Shilpa Sayana, M.D., submitted a medical source opinion, finding the claimant has limitations, including the ability to sit, stand and walk less than two hours in an eight-hour workday, with sitting no more than 45 minutes at one time, and standing for no more than five minutes at one time, as well as the limitation that she would be off task more than 25% of the workday and she would be absent from work more than four days per month due to her impairments or treatment (Exhibit 14F at 1- 5). I find this opinion is unpersuasive. Initially, *I note that the limitations imposed by this treating source in September 2020 are not indicative of the claimant's physical capacity through the date last insured, as this opinion was given months after the June 30, 2020 date last insured with no suggestion that the limitations were intended to apply as of an earlier date. Even so, I do not find Dr. Sayana's opinion is supported by the objective evidence, which reflects that the claimant had only one assessment of 14 of the 18 tender points for a diagnosis of fibromyalgia in June 2019* (See Exhibit 11F at 126 [R. 930[6]]). *Further, Dr. Kaplan noted that while there is a lot of variation as to how different individuals handle chronic pain, with 40-60% of people that recover and return to an active lifestyle, he found the primary care doctor's opinion to be overly restrictive*. In addition, in the *psychotherapy and counseling summary from January 8, 2021, the claimant's therapist reported that the claimant fails to follow through with treatment and becomes evasive when discussing her care* (Exhibit 23F at 6-7).

R. 40–41 (emphasis added).

Plaintiff challenges this evaluation of Dr. Sayana's opinion, arguing that the ALJ did not

properly consider the regulatory factors, that the ALJ mischaracterized Dr. Kaplan's hearing

---

[6] This record is dated May 23, 2019, not June 2019. R. 930.

testimony, which was not inconsistent with Dr. Sayana's opinion, and that the ALJ's failure to explain his finding that Dr. Sayana's opinion was unsupported in light of that physician's treatment notes all warrant remand. *Plaintiff's Memorandum of Law*, ECF No. 7, pp. 17–26; *Plaintiff's Reply Brief*, ECF No. 7, pp. 1–4. Plaintiff's arguments are well taken.

The ALJ based his discount of Dr. Sayana's opinion on three grounds: (1) it was not "supported by the objective evidence, which reflects that the claimant had only one assessment of 14 of the 18 tender points for a diagnosis of fibromyalgia in June 2019"; (2) "Dr. Kaplan noted that while there is a lot of variation as to how different individuals handle chronic pain, with 40-60% of people that recover and return to an active lifestyle, he found the primary care doctor's opinion to be overly restrictive"; and (3) "in the psychotherapy and counseling summary from January 8, 2021, the claimant's therapist reported that the claimant fails to follow through with treatment and becomes evasive when discussing her care[.]" R. 41.[7] The first reason

---

[7] The ALJ also noted that Dr. Sayana's September 29, 2020 opinion was dated after the expiration of Plaintiff's insured status on June 30, 2020. However, the ALJ did not, apparently, reject this opinion on that basis. R. 41 (finding that, although the opined limitations "are not indicative of the claimant's physical capacity through the date last insured . . . with no suggestion that the limitations were intended to apply as of an earlier date," those limitations were unpersuasive for other reasons); *see also Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11, p. 17 ("Plaintiff appears to ignore the ALJ's next sentence where he further explained, that 'even so' (in other words, even if the opinion related back) he found it was not 'supported by the objective evidence' (Tr. 41)."). Moreover, the Court notes that Dr. Sayana's opinion was rendered merely three months after the lapse of Plaintiff's insured status and during the course of that physician's long-time treatment of Plaintiff. *See* R. 1420–24 (noting, *inter alia*, that Dr. Sayana treated Plaintiff every two to three months since 2017); *see also Alston v. Astrue*, No. 10-cv-839, 2011 WL 4737605, at *3 (W.D. Pa. Oct. 5, 2011) ("[M]edical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue."). In any event, the Court notes that the ALJ went on to rely on evidence dated even later—in January 2021, *i.e.,* approximately six months after the lapse of Plaintiff's insured status—when discounting this opinion. R. 41. *Cf. Quinn v. Kijakazi*, No. 3:20-CV-01698, 2022 WL 178824, at *5 (M.D. Pa. Jan. 18, 2022) ("A selective approach to the evidence does not constitute substantial evidence upon which an ALJ may reasonably rely to deny benefits.") (citations omitted).

appears to reflect consideration of the regulation's supportability factor while the second and

third reasons appear to reflect consideration of the regulation's consistency factor. *See id.*; *see*

*also Kaschak v. Kijakazi*, No. CV 21-354-E, 2023 WL 2354812, at *4 (W.D. Pa. Mar. 3, 2023)

("'[S]upportability relates to the extent to which a *medical source has articulated support for the*

*medical source's own opinion*, while consistency relates to the relationship between a medical

source's opinion and *other evidence* within the record.'") (internal citations omitted) (emphasis

added). However, the Court concludes that the ALJ's consideration of these factors is deficient.

Turning first to the consistency factor, the ALJ has not explained how Dr. Kaplan's

testimony that 40 to 60 percent of people with chronic pain recover and return to an active

lifestyle establishes any inconsistency with Dr. Sayana's opinion. R. 41. As Plaintiff points out,

this statement also establishes that 60 to 40 percent of people with chronic pain do *not* recover

and return to an active lifestyle, a fact that the ALJ failed to address. *Plaintiff's Memorandum of*

*Law*, ECF No. 7, p. 25. Nowhere in his decision did the ALJ explain into which category

Plaintiff fell. Moreover, Dr. Kaplan's testimony, fairly read, is not clearly inconsistent with Dr.

Sayana's opinion. For example, although Dr. Kaplan characterized the treating physician's

opined limitations as "quite restrictive," he nevertheless went on to concede that Dr. Sayana,

Plaintiff's treating physician, had "more credibility" than did Dr. Kaplan, who had never even

examined Plaintiff. R. 66. Dr. Kaplan also suggested that Plaintiff engage in "a *trial* of sedentary

work" and, "if you can get the lady [Plaintiff] into a behavioral modification program, she *may*

be able to adjust to a work situation." R. 66 (emphasis added). Clearly, Dr. Kaplan did not

unequivocally testify that Plaintiff could work on a regular and continuing basis.

The ALJ also referred to a January 2021 "psychotherapy and counseling summary" as

inconsistent with Dr. Sayana's opinion. R. 41. However, that summary relates—at least in part—

to Plaintiff's psychological impairments of PTSD and depression, which the ALJ found were nonsevere at step two of the sequential evaluation. R. 33–35, 41. *See* R. 1431–33.

Moreover, the Court is not persuaded that the ALJ properly considered the regulation's supportability factor when evaluating Dr. Sayana's opinion. As detailed above, the ALJ found that Dr. Sayana's opinion was not supported by the objective evidence, "which reflects that the claimant had only one assessment of 14 of 18 tender points for a diagnosis of fibromyalgia in June 2019[.]" R. 41. However, as Plaintiff points out, even one such finding supports this treating physician's opinion regarding functional limitations arising from, *inter alia*, Plaintiff's fibromyalgia. R. 1420. Moreover, in finding at step two that Plaintiff's fibromyalgia was severe, even the ALJ observed another reference by Dr. Sayana to "[t]rigger points." R. 33 (citing, *inter alia*, Exhibit 11F/112, R. 916, containing Dr. Sayana's July 25, 2019 progress note reflecting "Trigger points: sub-occipitals, trapezius, levator scapulae, quadradus lumborum, paraspinals"); *see also Foley v. Barnhart*, 432 F. Supp.2d 465, 475 (M.D. Pa. 2005) ("These tender points are called "trigger points." . . . . All points may not be painful at all times in every person. . . . The pain may vary in intensity according to the time of day, weather, activity level, stress, and sleep patterns.") (citations omitted). Without more explanation by the ALJ, the Court cannot conclude that he sufficiently considered the regulation's supportability factor.

Finally, to the extent that the Commissioner offers other reasons or evidence to support his argument that Dr. Sayana's opinion is unpersuasive, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11, pp. 16–18, the Commissioner's *post hoc* rationalization in this regard must be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in

17

the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)).

This Court therefore concludes that remand of the matter for further consideration is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of Dr. Sayana's opinion and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Sayana's opinion and the RFC determination, the Court does not consider those claims.
.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  May 10, -2024                              _____*s/Norah McCann King*_____
                                                                    NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE